IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PATRICK JOHN STIRZAKER, ) | |
| ) | |
| Petitioner, ) | Case No. CV09-667-N-EJL |
| ) | |
| vs. ) | MEMORANDUM ORDER |
| ) | |
| LILIAN HICEL BELTRAN, ) | |
| ) | |
| Respondent. ) | |

Before the Court in this matter is a petition for return of child. The Court held a hearing on the petition on February 17, 2010. Following the hearing, the Court directed the parties to submit briefing citing to the transcript and record and took the matter under advisement. The parties have now submitted their briefing and the matter is ripe for the Court consideration. This difficult decision under ordinary circumstances is made more difficult here because of the conduct of the parties. The Court has spent a great deal of time wading through the arguments of the parties in an effort to craft an order that upholds the intent and purpose of the Hague Convention. The Court's findings are as follows.

**Factual and Procedural Background**

On December 21, 2009, the Petitioner, Patrick John Stirzaker, filed a Verified Petition for Return of Child and for provisional relief (the Petition) pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (the Convention) and the International Child Abduction Remedies Act (ICARA), 42 U.S.C. § 11601 *et seq.* (Dkt. No. 1). Petitioner seeks the return of PHS and has filed a Hague

Convention Application filed with the Central Authority in Mexico and forwarded to the United States Central Authority.

The Petitioner and Respondent, Lilian Hicel Hernandez Beltran, met in August of 1998 and were married on January 10, 2003 and remain married today. The parties are the parents of the eight year old child at issue in this case, PHS, who was born on May 10, 2001 in Rancho Mirage, California. (Dkt. No. 1, Ex. B). Petitioner alleges he, PHS, and the Respondent resided in Mexico and that the Respondent has wrongfully removed and/or retained PHS in March of 2009 from Mexico to the State of Idaho where they currently remain.

As PHS's father, Petitioner claims he has rights of custody arising from the laws of Mexico under the Civil Code for the Federal District. (Dkt. No. 1, Ex. D). Petitioner further asserts that he did not consent to PHS's removal from Mexico. In support of his Petition, the Petitioner submitted a multi-page narrative describing his life with the Respondent and the factual basis that PHS was wrongfully removed. (Dkt. No. 1, Ex. C). At the time of PHS's removal, Petitioner alleges he was exercising his custody rights within the meaning of the Convention as PHS's father at their habitual residence in Mexico.

The Respondent disputes these allegations and counters that the Convention does not apply here. Alternatively, the Respondent argues that an exception or affirmative defense to the Convention applies that precludes ordering the return of PHS to Mexico. The Respondent asserts the Petitioner was not exercising his parental rights, the return of PHS would pose a grave risk of harm to her and/or would violate fundamental human rights. Having considered the submissions by the parties, the arguments made and evidence offered at the hearing, and the entire record herein, the Court finds as follows.

## Analysis

The Convention is a civil legal mechanism available to parents seeking the return of, or access to, their child. As a civil law mechanism, the parents, not the governments, are parties to the legal action. The countries that are party to the Convention have agreed that a child who is habitually resident in one party country, and who has been removed to or

retained in another party country in violation of the left-behind parent's custodial rights, shall be promptly returned to the country of habitual residence. See 42 U.S.C. § 11601(a)(4). The Convention has two main purposes: first, to ensure prompt return of children to their state of habitual residence when they have been wrongfully removed and, second, ensure the rights of custody and access of one contracting state are respected by other contracting states. See Karkkainen v. Kovalchuck, 445 F.3d 280, 287 (3rd Cir. 2006) (citations omitted). The Convention procedures are designed "to restore the status quo prior to any wrongful removal or retention and to deter parents from engaging in international forum shopping in custody cases." See Baxter v. Baxter, 423 F.3d 363, 367 (3rd. Cir. 2005) (citation omitted). The Convention is not, however, intended or designed to settle international custody disputes, but rather to ensure that cases are heard in the proper court. See In re B. Del C.S.B., 559 F.3d 999, 1002 (9th cir. 2009) (citations omitted); see also Hague Convention art. 19 ("A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue.").

I.  Application of the Convention

The Convention applies to children under the age of sixteen who have allegedly been wrongfully removed or retained from their country of habitual residence to another country where both countries are signatory nations to the Convention. See Hague Convention art. 4. Both of these requirements are met here. Mexico and the United States, are both signatory nations to the Convention, In re B. Del C.S.B., 559 F.3d at 1002 n. 1, and there is no dispute that the child in question in this case, PHS, is under the age of sixteen.

The Convention also requires that the Petition for Return of Child be filed within one year of the date the child was allegedly wrongfully removed or retained. See Hague Convention art. 12.This requirement is also met in this case. The alleged wrongful removal and/or retention occurred upon PHS's arrival in Idaho between March or May of 2009 since which time she has not left Idaho. (TR, p. 20).[1] The Petition was filed December 21, 2009; less than one year since PHS's arrival in Idaho. (Dkt. No. 1).

---

[1] The transcript record from the February 17, 2010 hearing in this matter will be cited as "TR."

The Respondent additionally challenges whether the Convention applies here in light of the Petitioner's contacts with the State of Texas. (TR, p. 6). At the hearing, the Petitioner testified that he lives in Mexico but he has a residence in San Antonio, Texas that he visits. (TR, pp. 12, 33-36). The Respondent points out that the address listed on the Petition is the Texas residence, the Petitioner possesses a Texas driver's license, and he recently consulted a divorce attorney in Texas. As such, the Respondent argues that the Petitioner is in fact a resident of the State of Texas, not Mexico, and that he should be judicially estopped from applying the Convention in this case. The Respondent also argues PHS's United States citizenship precludes application of the Convention.

The Convention applies to any child who was habitually resident in a contracting state immediately before any breach of custody or access rights. See Hague Convention art. 4. There is nothing in the Convention precluding the petitioning parent from being a resident of the same country where the child is ultimately located after an alleged wrongful removal. Nor is the citizenship of PHS the determining factor under the Convention. The focus is on the child's habitual residence at the time of removal. Thus, the questions raised by the Respondent as to the Petitioner's residence in Texas or to PHS's citizenship do not determine the Convention's application here.[2] The Convention applies to cases involving the wrongful removal or retention of a child from the state of the child's habitual residence. See Asvesta v. Petroutsas, 580 F.3d 1000, 1003 (9th Cir. 2009). Here, the Petition alleges PHS was wrongfully removed and/or retained from her habitual residence in Mexico to Idaho. The Court finds the Convention applies to this matter.

Under the Convention, where the Petitioner demonstrates that a child has been wrongfully removed from its country of habitual residence, the child must be returned to its habitual residence unless an affirmative defense is established by the Respondent. Baran v. Beaty, 526 F.3d 1340, 1344-45 (11th Cir. 2008). In determining whether the removal and/or retention was wrongful, the court must answer a series of four questions: (1) when did the

---

[2] The parties also raise arguments over PHS's birth certificate, whether Mexican or United States. (TR, pp. 93, 101-03, 160, 177-198). These arguments do not impact the application of the Convention.

MEMORANDUM ORDER - Page 4
10ORDERS\STIRZAKER_MEXICO

removal or retention at issue take place (2) immediately prior to the removal or retention, in which state was the child habitually resident (3) did the removal or retention breach the rights of custody attributed to the petitioner under the law of the habitual residence (4) was the petitioner exercising those rights at the time of the removal or retention. See Hague Convention art. 3; Mozes v. Mozes, 239 F.3d 1067 (9th Cir. 2001). If the Petitioner satisfies his or her burden, the Respondent may attempt to show the Petition should be denied because an exception or affirmative defense to the Convention applies. Asvesta, 580 F.3d at 1003-04. As to the first question, the Court has already determined that PHS was removed in approximately March of 2009. The Court will discuss the remaining three questions and whether any exceptions apply below.

## II.     The Child's Country of Habitual Residence

Petitioner contends PHS's habitual residence immediately prior to her wrongful removal and/or retention is Mexico. The term "habitual residence" is not defined by either the Hague Convention or the ICARA. See Hague Convention art. 3. Rather a child's habitual residence is defined by examining specific facts and circumstances and is a term courts should not interpret technically or restrictively. See Harkness v. Harkness, 577 N.W.2d 116, 121 (Mich. Ct. App. 1998) ("determination of 'habitual residence' depends largely on the facts of the particular case"). Although it is the child's habitual residence that the court must determine, in the case of a young child, the conduct, intentions, and agreements of the parents during the time preceding the abduction are important factors to be considered. See Feder v. Evans-Feder, 63 F.3d 217, 223 (3d Cir. 1995); see also Pesin v. Osorio Rodriguez, 77 F.Supp.2d 1277, 1285 (S.D. Fla. 1999) (court would focus on parents' actions and shared intentions where children were four and six at time of alleged wrongful retention). In addition,

> [T]here must be a degree of settled purpose. The purpose may be one or there may be several. It may be specific or general. All that the law requires is that there is a settled purpose. That is not to say that the propositus intends to stay where he is indefinitely. Indeed his purpose while settled may be for a limited period. Education, business or profession, employment, health, family or merely love of the place spring to mind as common reasons for a choice of regular abode, and there may well be many others. All that is necessary is that

> the purpose of living where one does has a sufficient degree of continuity to be properly described as settled.

Feder, 63 F.3d at 223 (quotation omitted). Although the Respondent does not concede the habitual residence of PHS is Mexico, she does not raise much dispute over the issue. (Dkt. No. 51).[3]

Having reviewed the record in this case, the Court finds the habitual residence of PHS immediately prior to her removal and/or retention to Idaho was Mexico. The testimony at the hearing from both parties demonstrates that PHS resided and was attending school in Mexico as well as was involved in sports, dance, and other classes in Mexico. (TR, pp. 41, 103, 105-06). This was true from shortly after her birth until her removal in the spring of 2009. (TR, pp. 17-20, 101). The testimony demonstrates that both Petitioner and Respondent resided together in Mexico with PHS. There were times when PHS would travel on holidays or vacations outside of Mexico. However, she would return to Mexico after these travels. (TR, pp. 105-06). It was not until some where between March and May of 2009, that the Respondent and PHS arrived in Idaho and have not returned to Mexico. (TR, pp. 20-21). Given these particular circumstances as portrayed by both parties, the Court finds the settled purpose of both parties was to reside in Mexico as their habitual residence.

The Respondent makes much of the fact that the Petitioner did not have contact with PHS for approximately a year from the time the Respondent filed charges against the Petitioner in Mexico in April of 2008 until PHS's removal from Mexico. The Petitioner does not dispute that he had no contact with PHS because of the pending charges and investigation. (TR, pp. 15-17, 36). Though he did not have contact with PHS during this time, Mexico continued to be the place of residence for both parties and PHS. The fact that the Petitioner did not have contact for a period of time may be relevant to other

---

[3] Respondent's first attorney filed a response to the Petition (Dkt. No. 32) arguing the Petition does not identify any habitual residence in Mexico within the meaning of the Convention. This argument, however, has not been carried any further in the Respondent's objections and arguments to the Petition. The Respondent's more substantive objections to the Petition involve the other aspects of the Convention's requirements and defenses discussed later in this Order. (Dkt. No. 51).

considerations discussed below, but it remains that based on the totality of the circumstances presented by both parties, PHS's habitual residence under the Convention is Mexico.

III.     Was the Child Wrongfully Removed or Retained

Petitioner now has the burden to prove the child was wrongfully removed or retained by a preponderance of the evidence. A removal or retention is "wrongful" under Article 3 if 1) it breaches a person's custody rights under the law of the state in which the child was habitually resident immediately prior to the removal or retention and 2) at the time of the removal or retention those rights were actually exercised, or would have been so exercised, but for the wrongful removal or retention. See Avesta, 580 F.3d at 1004; Lops v. Lops, 140 F.3d 927, 935 (11th Cir. 1998) (citing Hague Convention art. 3); Ohlander v. Larson, 114 F.3d 1531, 1534 (10th Cir.1997) (same). If the removal is determined to be wrongful, the child must be returned to the state of its habitual residence unless the Respondent establishes an exception or affirmative defense. See Baran, 526 F.3d at 1344 (citations omitted).

     A.     Existence of Custody Rights

The Convention defines "rights of custody" as including "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." See Hague Convention art. 4. This right need not be sole custody. In fact, there need not be any custody decree in effect to employ the Convention. If there was no court order in effect at the date of the abduction, these "rights of custody" are established by the law in the state in which the child was a habitual resident before his or her removal, in this case Mexico.

Petitioner maintains that he, as PHS's father, has custody rights. (TR, pp. 30, 70-71). Petitioner's Mexican attorney, Perez Inclan, testified regarding parental rights according to Mexican law and stated that the Petitioner still had his parental rights. (TR, pp. 71-73). The Respondent has not offered any evidence that Petitioner's rights as PHS's father have been extinguished. Instead, Respondent's arguments go to the question of whether the Petitioner was exercising his custody rights. The Court finds, based on the record, that the

MEMORANDUM ORDER - Page 7
10ORDERS\STIRZAKER_MEXICO

Petitioner has shown by a preponderance of the evidence to have custody rights as the biological father of PHS. (TR, pp. 70-71).

### B. Exercising Custody Rights

To apply for the return of a child, the left-behind parent must have had and been actually exercising a "right of custody" at the time of the abduction, and must not have given permission for the child to be removed or, in the case of a retention, to be retained beyond a specified, agreed-upon period of time. Petitioner need only meet a "minimal" burden for demonstrating he was exercising his parental rights in the form of "some preliminary evidence that he actually took physical care of the child, a fact which normally will be relatively easy to demonstrate." Asvesta, 580 F.3d at 1018 (citation omitted). Generally this determination is easily met once it has been determined that the Petitioner had valid custody rights in the child's Habitual residence. Id. Where a person has demonstrated the existence of valid custody rights, they cannot, under the Convention, fail to exercise those rights "short of acts that constitute clear and unequivocal abandonment of the child." Friedrich v. Friedrich, 78 F.3d 1060, 1066 (6th Cir. 1996). Whether a parent has exercised their custody rights well or poorly is not decided by this Court. Id.

The Petitioner testified that he was exercising his parental custody rights and that he and PHS had a good father and daughter relationship generally playing games and spending time together. This relationship changed, the Petitioner claims, when the Respondent filed sexual assault charges against the Petitioner in April of 2008 and he was forced to leave the family home. The Respondent counters that the Petitioner was not involved in PHS's life before or after the charges were filed and that he had no contact with PHS for almost a year prior to her removal. The Respondent testified that the Petitioner did not help pay the costs for PHS's birth, has not paid child support, did not pay for PHS's schooling, and did not send cards or gifts on holidays or birthdays. (TR, pp. 103-06, 116). The Respondent claims in her affidavit that the Petitioner abandoned them and hid from she and PHS. (Dkt. No. 20, p. 10). After PHS arrived in Idaho, Respondent further argues the

Petitioner still did not attempt to contact or visit PHS even after he was aware of her location.

On rebuttal, Petitioner testified to the contrary stating that prior to the charges being filed he took care of PHS while the Respondent would leave for several days at a time for her job with Mexicana Airlines. (TR, pp. 162-64). As an example, the Petitioner testified that he had participated in a reading program at PHS's school in late 2007 where he received a "dad of the month" award. (TR, pp. 164-65). After the charges were filed, the Petitioner testified that he was advised by his attorney to leave the home and avoid contact PHS. (TR, pp. 15-17, 82). This is the reason, the Petitioner counters, that he did not have contact with PHS for almost a year prior to her removal. Petitioner further contends during this time he still cared for PHS by paying the rent on the Mexican residence and that PHS had medical coverage. (TR, pp. 15-19, 39-45). Petitioner also testified that upon learning of PHS's location, he did attempt to contact PHS in Idaho and to send gifts to PHS.

On April 22, 2008, the Respondent filed charges with the Mexican police alleging the Petitioner had abused PHS. Shortly thereafter, on April 24, 2008, upon learning of the charges and upon the advise of his Mexican counsel, the Petitioner left the family residence in Mexico and avoided contact with PHS because of the charges. (TR, pp. 15-17, 30). The Petitioner's Mexican attorney testified that the criminal justice system in Mexico essentially holds an accused individual to be considered guilty until proven innocent. (TR, pp. 52-55).[4] Under these circumstances, the Court finds the Petitioner was reasonable in heeding the advice of his Mexican attorney to refrain from contacting PHS. Prior to this event, however, the Court finds the Petitioner was exercising his parental rights. (TR, pp. 16-17, 39-45). It was only the Respondent's accusations against the Petitioner made to the Mexican authorities that altered the Petitioner's exercise of his parental rights. The Respondent's own affidavit even states that the Mexican police instructed her not to let the

---

[4] Thought the Court did not find Mr. Inclan's testimony to be without bias in favor of the Petitioner, the Court's own research of Mexican law is consistent with Mr. Inclan's representations. (TR, pp. 110-112, 114).

Petitioner see PHS while the investigation was pending. (Dkt. No. 20, p. 9). This explains why the Petitioner did not have contact with PHS during this time. (TR, p. 36).

The investigation by Mexican authorities concluded on February 23, 2009 when the charges were dismissed because there was no evidence to support them. (Dkt. No. 40). In March of 2009, Respondent claims she discovered that she was locked out of the Texas residence and again in May of 2009 when she alleges the Petitioner stopped paying rent on their residence in Mexico City. (Dkt. No. 20, p. 12). PHS was removed from Mexico during this time period sometime around March of 2009. Thus, it seems at least until the time the Respondent removed PHS from Mexico, these residences were still being paid for by the Petitioner and available to PHS and the Respondent. (TR, pp. 39-41, 210) ("[Petitioner] was paying the rent.").

Having considered the totality of the circumstances here, the Court finds that the Petitioner has met his burden to show he was involved with PHS's care and custody and exercising his parental rights up until the Respondent filed the charges against him in April of 2008. Though Respondent testified to the contrary, the Court finds the Petitioner's testimony and the evidence in the record satisfies the minimal showing required on this issue. (TR, pp. 105-06, 167). There is no evidence that the Petitioner was not exercising his custody rights prior to the April 2008 charges being filed. In fact, the record demonstrates just the opposite. Even the charges filed by the Respondent contradict the Respondent's argument that the Petitioner had no contact with PHS. Instead, the record demonstrates that the Petitioner was exercising his custodial rights. Following the filing of the charges, the Petitioner was forced to cut off contact with PHS. However, at this time, the Petitioner continued to attempt to send birthday gifts and paid rent on the apartment in Mexico. (TR, pp. 51-52, 145-46, 166-67).[5] The Petitioner appears to have also attempted to contact PHS in May and/or June of 2008 at her school through his attorney and/or his attorney's wife. (Dkt. No. 20), (TR, pp. 15-19, 39-45). The parties dispute whether the Petitioner paid for

---

[5] The Respondent acknowledged during her testimony that the Petitioner had called in January of 2010 to speak to PHS. (TR, p. 147).

any of PHS' private school tuition for the 2008-2009 academic year and whether he provided funds to the Respondent for PHS' general care in the way of food and clothing. (TR, pp. 42, 144-45, 166).[6] Regardless of the squabbling over who paid for what and how much, the Petitioner was contributing to the care of PHS by paying the rent on the family residence and was attempting to contact PHS in the limited fashion available to him given the pending charges. Based on this record, the Court finds the Petitioner has shown that he exercised his parental rights prior to the removal of PHS from Mexico. The Court further finds that the Petitioner did not know of or agree to PHS's removal from Mexico.

IV.     Conclusion as to the Petitioner's Article 3 Showing

The Court finds the Petitioner has met the requirements of Article 3 of the Convention and shown that PHS was wrongfully removed from her habitual residence in Mexico by the Respondent in violation of his custodial right which he was exercising at the time of her removal . As such, the Petition for Return of Child filed by the Petitioner shall be granted unless the Respondent is able to demonstrate that an exception or affirmative defense to the Convention applies. See Avesta, 580 F.3d at 1003-04.

V.      Exceptions/Affirmative Defenses to the Convention

   A.   Actually Exercising Custodial Rights, Consent to Removal, and/or Abandonment

Where, as here, the Petitioner has satisfied the requirements of Article 3 of the Convention for return of child, the Respondent my rebut the Article 3 determination by showing either the Petitioner was not actually exercising his custodial rights at the time of removal or had consented to or subsequently acquiesced to the removal. See Avesta, 580 F.3d at 1004 (quoting Hague Convention art. 13(a)). Under Article 13(a) of the Convention, the Court is not required to order return of the child if the Respondent establishes that the person having the care and custody of the person of the child at the time of removal or retention "had consented to or subsequently acquiesced to the removal or retention." Hague

---

[6] The Petitioner's Mexican attorney advised the Petitioner to not provide funds to the Respondent after the charges had been filed. (TR, pp. 85, 87).

Convention art. 13(a). To show consent to the removal, the Court looks at Petitioner's conduct prior to the contested removal or retention. The consenting exception does not require the same level of formality as acquiescence. To show acquiescence, the Court looks a Petitioner's conduct considers whether the Petitioner subsequently agreed to or accepted the removal or retention. Acquiescence, requires an act or statement with the requisite formality evidencing such acquiescence. This determination depends on the subjective intent of the parent claiming to have acquiesced.

Here, Respondent argues the Petitioner was not actually exercising his custodial rights at the time of removal or had consented to or subsequently acquiesced to the removal. (TR, pp. 105-06). The Court disagrees. As stated above, the record does not support the Respondent's arguments that the Petitioner was not exercising or had abandoned his custody rights. Likewise, the Court finds the Respondent has not satisfied her burden to show the Petitioner had consented and/or acquiesced to PHS' removal. Even though it is true the Petitioner did not have contact with PHS after April of 2008, the reason for this was the charges filed against him by the Respondent. The Petitioner testified that the only reason he lost contact with PHS was due to the charge filed against him by the Respondent and then the Respondent's removal of PHS. (TR, pp. 15-17). Were it not for the charges and subsequent removal of PHS to Idaho, the Petitioner would have continued to exercise his parental custody rights. As such, it cannot be said that the Petitioner acquiesced or agreed to PHS's removal let alone abandoned his parental rights. In fact, the Petitioner adamantly and unequivocally denied these arguments at the hearing testifying that he did not consent to the Respondent leaving Mexico with PHS and that it was done without his knowledge. (TR, pp. 21, 23). Because the Respondent's claims that the Petitioner had abandoned PHS are unsupported in the record, the Court finds these exceptions have not been shown to exist here.

      B.     Grave Risk of Harm

Another exception to the Convention's mandate for the return of child applies where it is shown there exists a grave risk that the child's return would expose the child to

physical or psychological harm or otherwise place the child in an intolerable situation. See Hague Convention art. 13(b). Such a defense requires the Respondent to present clear and convincing evidence. See Hague Convention art. 13(b); 42 U.S.C. § 11603(e)(2)(A). This is a narrow exception requiring a showing that the child has a "real risk of being hurt...as a result of repatriation." Blondin v. Dubois, 238 F.3d 153, 162 (2nd Cir. 2001). This affirmative defense does not require the Court to find the child was previously harmed but to, instead, determine whether the child would be exposed to grave risk of physical or psychological harm, or an otherwise intolerable situation, upon her return to Mexico. See Baran, 526 F.3d at 1346. Obviously the prior actions of the parties bears on this determination.

Here, the Respondent alleges that prior to her removal PHS was having difficulty in school and behavioral problems because of the Petitioner's abuse of PHS in the form of inappropriate touching and nudity in the home. (TR, pp. 114-115, 120, 134, 136-41). The Respondent testified that PHS fears her father and is in counseling and doing better since coming to Idaho, but still fears contact with the Petitioner. (TR, pp. 143, 147-53). These allegations are disputed by the Petitioner who argues the Respondent has turned PHS against him and made up the charges of abuse which the Mexican authorities have determined to be unfounded. (TR, pp. 165-66, 168-172).

This question is difficult to resolve because the obvious distaste between the Petitioner and Respondent draws into question the motives and biases of both parties. It remains, however, the Respondent's burden to prove this exception applies by clear and convincing evidence and she has not done so here. Respondent's testimony regarding PHS's reactions to the Petitioner's attempts to contact her are troubling but not conclusive. The Petitioner's testimony that PHS may have seen him in the nude is equally troubling. That being said, it is not this Court's role to determine the appropriateness of one's behaviors or to resolve the parties' custody dispute. The task before this Court is to determine whether PHS should be returned to the place of her habitual residence under the Convention. The Court does not take lightly the possibility of abuse or inappropriate

conduct towards PHS. However, the Respondent simply has not shown clear and convincing evidence of a grave risk of harm or psychological damage. The Petitioner's description of the "silly" games he played with PHS is innocent of any abusive behavior and he denied any abusive touching or inappropriate conduct. (TR, pp. 24-27). It is also telling that the charges in Mexico against the Petitioner for the same conduct the Respondent has alleged here were dismissed for lack of evidence. In light of these facts, the Court finds this exception to the Convention has not been shown.

The Convention's purpose is to ensure the prompt return of children to the state of their habitual residence and secure protection for the right of custody and access under the law of that state. See Hague Convention art. 1. This exception to the Convention's purpose must show a real risk of harm that simply has not been demonstrated here. Though the Court is bristled by the allegations, they have been deemed to be unfounded by the Mexican authorities who investigated them. As to the Respondent's testimony regarding PHS's reaction to the Petitioner's attempts at contact the Court again finds the testimony to be unreliable under the circumstances. The Respondent is obviously biased against the Petitioner just as much as the Petitioner is biased towards the Respondent. Regardless, PHS's alleged reaction may be subject to a variety of explanations not the least of which is that the Petitioner has been unable to contact PHS for over a year now. Such a long absence from a child of PHS's age may elicit a fearful response having nothing to do with any prior abuse. This Court has nothing before it upon which conclude by clear and convincing evidence that PHS is in grave danger by ordering her return to Mexico.

    C.    Child Objects

Another exception exists where the Child objects and has reached an age of maturity and/or become settled in new environment. See Hague Convention art. 13(c). This exception must be proven by the Respondent by a preponderance of the evidence. Where the child objects and has attained the age of maturity at which it is appropriate to take account of the child's views. The Respondent does not raise this argument in her

supplemental brief. (Dkt. No. 51). The Court agrees there is no evidence showing this exception applies here.

        D.     <u>Return of Child Would Violate Human Rights and Fundamental Freedoms</u>.

Under the Convention, an exception to an order to return child exists where the Respondent proves by clear and convincing evidence that such return would violate human rights and fundamental freedoms. <u>See</u> Hague Convention art. 20.

1. The return of child may be refused if it would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms.

2. Return would shock the conscience of the Court or offend due process.

Here, the Respondent argues the corruption in Mexico make it impossible for she and PHS to receive a fair trial if forced to return to Mexico. (TR, pp. 154-57). The Respondent notes that PHS has rights as a United States citizen that will not be protected if forced to return to Mexico. Petitioner counters that this argument has no merit and is without supporting authority as the Respondent argues are unfounded speculation. Petitioner further notes the Respondent availed herself of Mexico's legal system in filing her charges against him.

Though the Court is troubled by the possibility of subjecting anyone to corruption or unfair process, the question to be resolved here does not involve the underlying custody dispute. Moreover, the Respondent's arguments regarding her concerns over the Mexican legal system are precisely the thing the Convention seeks to prevent. <u>See</u> <u>Baran</u>, 526 F.3d at 1344-45 (The Convention acts to "restore the parties to the pre-abduction status quo and deter parents from crossing borders in search of a more sympathetic forum for child custody proceedings.") (citations omitted). The purpose of the Convention is to ensure that custody matters are resolved by the child's habitual residence. Where a parent wrongfully removes or retains a child for the purpose of avoiding the legal system in the habitual residence, the Convention steps in to ensure the prompt return of the child to the habitual residence. <u>See</u> <u>Asvesta</u>, 580 F.3d at 1003-04. Obviously the exceptions exist to prevent

harm to the child. Here, however, the Respondent has not shown that such harm would occur such that this Court must act contrary to the Convention's clear purpose in order to protect human rights and fundamental freedoms or because return would shock the conscience of the Court or offend due process. Moreover, though the legal systems of the United States and Mexico are different, there has been no evidence that Mexico's system would violate human rights and fundamental freedoms or shock the conscience of the Court.[7] As such, the Court finds the Respondent has not shown by clear and convincing evidence that returning PHS to Mexico would violate human rights and fundamental freedoms.

VI.  Conclusion

Based on the foregoing, the Court finds the Petitioner has met his burden under the Convention to have his Petition for Return of Child granted. The Court also finds the Respondent has failed to show that any of the exceptions or affirmative defenses to the Convention apply. The Convention's exceptions are to be narrowly interpreted so as not to undermine the express purposes of the Convention. Asvesta, 580 F.3d at 1004-06 (citation omitted). Here, the Respondent has failed to supply evidence that any of the exceptions exist and instead generally argued the best interests of the child are that she not return to Mexico or have contact with the Petitioner. These arguments are simply not matters for this Court to resolve. See Id. at 1005-06 ("[t]he Convention is clear that a court considering a Hague petition should not consider matters relevant to the merits of the underlying custody dispute such as the best interests of the child, as these considerations are reserved for the courts of the child's habitual residence.") (citation omitted).

Further, the Court notes that even if the Respondent had shown an exception to apply, Article 13 of the Convention does not "require a court to refuse to return of the child" and that the Court has discretion in such cases to, where appropriate, return a child

---

[7] The cross-examination of Mr. Inclan regarding the possible divorce and custody battle between the Petitioner and Respondent (TR, pp. 78-82) reveals the distasteful nature of the underlying brawl between the parties. The affidavits filed by each side further evidence that the parties' infighting will not be easily resolved nor is this Court tasked with doing so.

despite the existence of a defense or exception to the Convention where return furthers the purposes of the Convention. Asvesta, 580 F.3d at 1004 (citations omitted); see also, Baran, 526 F.3d at 1344 (citations omitted). In this case, the return of PHS achieves the Convention's aims.

In making this ruling, the Court makes clear that it is not ordering PHS's return to the custody of the Petitioner as it is not the role of this Court to resolve the parties underlying custody battle. It is for another body to wade through the countervailing interests and allegations made by the parties here regarding PHS's custody. Instead the Court concludes that PHS must be returned to Mexico pursuant to the Convention the manner in which this will occur can be resolved in one of two ways.

First, though the Court is fully aware that the Convention's purpose is to facilitate the immediate return of a child wrongfully removed to the habitual residence, the Court strongly urges the parties here to act in the best interests of the child and allow PHS to remain in her current location until the school year has been completed while allowing the Petitioner access to PHS. During this time, the whereabouts of both the Respondent and PHS will be known to and ensured by the Court who will retain possession of the passports of both. Following the school year, PHS shall then return to Mexico in the custody of either the mother, father, or some other mutually agreed upon custodian and that country will resolve the custody issues between the parties. Counsel as well as this Court know that a successful litigation is had where both sides feel they have been afforded a fair hearing. This suggested resolution, the Court believes, is fair to both sides while still taking into consideration the best interests of PHS. The child's future is dependent upon the mature judgment of her parents. The parties shall advise the Court on or before April 15, 2010 as to whether they agree upon the above suggested resolution by filing a joint stipulation in the record and submitting a proposed order to the Court's email proposed order's box at EJL_Orders@id.uscourts.gov. Such stipulation shall include:

> 1) The current location and contact information for the Petitioner, Respondent, and PHS;

MEMORANDUM ORDER - Page 17
10ORDERS\STIRZAKER_MEXICO

2) That the Respondent and PHS will remain in the District of Idaho and at the location and contact information provided to the Court;
3) That the passports of Respondent and PHS will remain in the custody of the Clerk of the Court of this District;
4) The parties' agreement as to how, when, and in what manner the Petitioner will be afforded access to PHS;
5) The date, time, and manner in which PHS will return to Mexico following the school year;
6) Details regarding how the costs associated with PHS' travel to Mexico, housing, and general care will be divided among the parties; and
7) Specifics as to the custody of the child once returned to in Mexico.

If the parties cannot agree upon this solution or some other agreed upon resolution, then the Court will order that PHS be returned to her habitual residence in Mexico. The parties shall jointly meet and confer to coordinate and agree upon the time, manner, and date of the return of PHS to Mexico. Such meeting shall occur no later than April 15, 2010 and the date of PHS' return to Mexico shall be effectuated no later than April 30, 2010. After the parties have met, the Petitioner shall initiate a telephone conference call with all parties on the line connecting the Court's Staff Attorney, Lauri Thompson, at 208-334-9239 on April 16, 2010 at 10:00 a.m. (MST) at which time the parties shall advise the Court of their agreement for PHS' return. Following the telephone conference, the Petitioner shall submit a proposed Order for the Court's consideration to the Court's email proposed order's box, EJL_Orders@id.uscourts.gov, that adheres to the agreement of the parties. Thereafter the Court will enter an appropriate Order of Return.

## ORDER

Based on the foregoing and being fully advised in the premises, the Court HEREBY ORDERS that the Petition for Return of Child (Dkt. No. 1) is **GRANTED**. The parties shall proceed as directed in this Order.

DATED: **April 6, 2010**

Honorable Edward J. Lodge
U. S. District Judge